THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

NAMU, INC.,

                Plaintiff,

            v.

NAMU HAIGHT, LLC; DAVID
LEE.,

                Defendants.

No. 3:16-cv-00453-PK

**FINDINGS AND RECOMMENDATION**

**PAPAK, Magistrate Judge:**

Namu, Inc., doing business as Namu Korean and Hawaiian and Namu Killer Korean BBQ (Plaintiff), brings this action for declaratory relief against defendants Namu Haight, LLC; and David Lee (Defendants). ("Namu" means "tree" or "wood" in Korean.) Plaintiff operates three food carts in Portland selling Korean barbecue under the Namu name. Plaintiff also has a website, namufoodcart.com.

Defendants operate Namu Gaji, an Asian fusion restaurant, and a food stand, in San Francisco, California. ("Gaji" means "branch" in Korean.) Defendant David Lee owns the federally registered trademarks NAMU GAJI and NAMU, and licenses the rights to these marks to defendant Namu Haight, LLC, and to Bodhi Restaurant, LLC, a sister company that is not

named as a defendant here.

In March 2016, Plaintiff filed this action, seeking a declaration that it has not infringed Defendants' trademarks; that Defendants' Namu Gaji trademark is invalid; and that Defendants have violated the Oregon Unlawful Trade Practices Act.

After Plaintiff filed this action, the parties continued their ongoing settlement negotiations. In July 2016, defendant David Lee, with his brother Dennis Lee, executed a Covenant Not To Sue on Defendants' behalf directed at Plaintiff. Plaintiffs refused Defendants' request to dismiss this action based on the Covenant Not To Sue. Defendants then filed this motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(2), asserting lack of subject matter jurisdiction and lack of personal jurisdiction.

I recommend granting Defendants' motion to dismiss on both grounds. As to subject matter jurisdiction, Defendants' Covenant Not To Sue moots this action. As to personal jurisdiction, Defendants' cease and desist letter, and correspondence and settlement negotiations between the parties, are not sufficient to create personal jurisdiction over Defendants in Oregon.

## BACKGROUND

Defendants state that since 2006, they have operated restaurants and a food cart in San Francisco under the names Namu and Namu Gaji. In May 2013, Defendants obtained a trademark for Namu, and in July 2015, Defendants obtained a trademark for Namu Gaji. Compl., Exs. C & D, ECF No. 1. Defendants have not used the Namu or Namu Gaji marks outside of San Francisco.

Plaintiff states that since 2010, it has continuously operated food carts in Portland using the Namu name. Plaintiff alleges that it now operates three food carts in southeast Portland.

In late 2015, Defendants learned that Plaintiff was using the Namu name for food carts in Portland. Defendants sent Plaintiff a cease and desist letter in January 2016, asserting that Defendants' Namu and Namu Gaji marks are protected by common law and U.S. Trademark registration. Compl., Ex. B. The cease and desist letter states that Plaintiff's use of "namu" was "confusingly similar" to Defendants' trademarks, potentially leading customers and others to believe that Defendants' restaurants were connected to Plaintiff's food carts. Defendants' cease and desist letter concludes:

> Namu Haight trusts you meant no harm to it in taking the term "namu" for your own use and believes that this matter may still be resolved amicably with your cooperation. In that regard, and to protect its rights and avoid confusion, Namu requires that you cease use of the term "namu" in connection with your food carts and transfer to it your infringing URL namufoodcart.com.
>
> Notwithstanding Namu Haight's willingness to amicably settle this matter, it takes infringement of its marks seriously. Your agreement within the next 10 days to cease use of the term "namu" and to adopt a replacement name that is not confusingly similar will render further action on Namu Haight's part unnecessary. Please signify your agreement by executing and returning this letter no later than February 5, 2016. We appreciate your anticipated cooperation in this matter and look forward to your speedy reply.

Compl., Ex. B.

Plaintiff responded by letter dated February 19, 2016. Compl., Ex. G. Plaintiff stated that it had used the Namu name in Portland since 2010. Plaintiff stated, "we respectfully disagree that you currently hold any common law rights or otherwise, to use the name Namu or Namu Gaji within the Portland, OR Metropolitan Area. Moreover, any rights you may have in Namu, Namu Gaji, and/or the Namu Wood design, did not vest until after Namu, Inc.'s date of first use in this region, rendering them unenforceable." Compl., Ex. G. Plaintiff concluded that it would continue using its trade names in the Portland area until Defendants provided "credible

legal authority supporting its right to use the name Namu, Namu Gaji, and/or the Namu Wood

design, in the Portland Metropolitan Area." Compl., Ex. G.

The parties began negotiating settlement. On March 15, 2016, however, Plaintiff filed

this action, "abruptly and without warning" according to Defendants. Defs.' Mot. to Dismiss 2,

ECF No. 18.

The parties continued settlement negotiations after Plaintiff filed this action. According

to Defendants, they learned through discussions with Plaintiff that Plaintiff's use of the Namu

mark was limited to the Portland area. Defendants also determined that Plaintiff began using the

Namu mark in 2010, after Defendants' initial use of the mark in 2006 but before Defendants filed

to register the Namu marks with the U.S. Patent and Trademark Office. Defendants concluded

Plaintiff's use of the Namu mark in Portland "either did not infringe Defendants' rights to the

NAMU Marks or did not warrant the expenditure of further litigation resources." Defs.' Mot. to

Dismiss 2. Defendants then sent Plaintiff a Covenant Not To Sue, effective July 28, 2016.  The

Covenant Not To Sue provides that Defendants

> unconditionally and irrevocably covenants to refrain from making any claim(s) or
> demand(s), or from commencing, causing, or permitting to be prosecuted any
> .action in law or equity against Namu Portland or any of its parents, subsidiaries,
> divisions [etc.] on account of any possible cause of action based on or involving
> trademark infringement, unfair competition, or dilution, under state or federal law
> in the United States relating to the Marks based on Namu Portland's current,
> ongoing, and/or previous use of the term "namu" in connection with Namu
> Portland's food carts located within the city of Portland, Oregon as described in
> Paragraph 10 of the Complaint, and within the reasonable zone of natural
> geographic expansion from the city of Portland, Oregon, including use of the term
> "namu" through the domain name www.namufoodcart.com and related website,
> regardless of whether those services are or were offered for sale, advertised, sold,
> or otherwise used in commerce before or after the Effective Date of this
> Covenant.

Lee Decl., Ex. 1, at 2-3, ECF No. 20-1. The Covenant also includes identical paragraphs as to Namu Haight LLC, Bodhi Restaurant LLC, and David Lee. The Covenant is signed by defendant David Lee and by his brother, Dennis Lee, as a managing member of defendant Namu Haight LLC and the Bodhi Restaurant LLC.

Plaintiff refused to dismiss this action based on the Covenant Not To Sue. Defendants then filed this Motion to Dismiss.

## LEGAL STANDARDS

### I. Motion to Dismiss for Lack of Subject Matter Jurisdiction

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction "can attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency, and in so doing rely on affidavits or any other evidence properly before the court." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989). The party asserting jurisdiction has the burden of proving subject matter jurisdiction exists. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). At this stage of the case, the court generally accepts the plaintiff's version of events as true. *See Rhoades v. Avon Products, Inc.*, 504 F.3d 1151, 1160 (9th Cir. 2007).

### II. Motion to Dismiss for Lack of Personal Jurisdiction

When a defendant brings a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, "the plaintiff bears the burden of establishing that jurisdiction is proper." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). If the court bases its determination on written materials rather than an evidentiary hearing, the plaintiff must make only "a prima facie showing of jurisdictional facts." *Boschetto,* 539 F.3d at 1015

(quotation marks and citation omitted). A plaintiff cannot rest solely on the bare allegations of

its complaint, but the court must take uncontroverted allegations in the complaint as true. *Id.*

DISCUSSION

## I. Defendants' Covenant Not To Sue Shows There Is No Actual Case or Controversy

Article III of the U.S. Constitution limits this court's judicial power "to deciding cases

and controversies." *Timbisha Shoshone Tribe v. U.S. Dep't of Interior*, 824 F.3d 807, 811 (9th

Cir. 2016). If at any time during the litigation there is no longer an actual controversy, the case

becomes moot. *Id.* at 812 (citing *Already, LLC v. Nike, Inc.*, ___ U.S. ___, 133 S. Ct. 721, 726

(2013)). "No matter how vehemently the parties continue to dispute the lawfulness of the

conduct that precipitated the lawsuit, the case is moot if the dispute 'is no longer embedded in

any actual controversy about the plaintiffs' particular legal rights.'" *Already*, 133 S. Ct. at 726-

27 (quoting *Alvarez v. Smith*, 558 U.S. 87, 93 (2009)).

A defendant cannot, however, "automatically moot a case simply by ending its unlawful

conduct once sued," because "[o]therwise, a defendant could engage in unlawful conduct, stop

when sued to have the case declared moot, then pick up where he left off, repeating this cycle

until he achieves all his unlawful ends." *Id.* at 727. Therefore, a defendant claiming that its

voluntary compliance moots a case "'bears the formidable burden of showing that it is absolutely

clear the allegedly wrongful behavior could not reasonably be expected to recur.'" *Id.* (quoting

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000)). When

a plaintiff seeks declaratory relief, as Plaintiff does here, "the test for mootness is 'whether the

fact[s] alleged, under all the circumstances, show that there is a substantial controversy, between

parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance

of a declaratory judgment.'" *Timbisha Shoshone Tribe*, 824 F.3d at 812 (quoting *Gator.com*

*Corp. v. L.L. Bean, Inc.*, 398 F.3d 1125, 1129 (9th Cir. 2005) (en banc) (omitting internal

quotation marks)).

Here, Defendants argue that the Covenant Not To Sue shows that there is no substantial

controversy between the parties that could justify the exercise of subject matter jurisdiction. The

Covenant provides that Defendants

> unconditionally and irrevocably covenants to refrain from making any claim(s) or
> demand(s), or from commencing, causing, or permitting to be prosecuted any
> action in law or equity against Namu Portland or any of its parents, subsidiaries,
> divisions . . . on account of any possible cause of action based on or involving
> trademark infringement, unfair competition, or dilution, under state or federal law
> in the United States relating to the Marks based on Namu Portland's current,
> ongoing, and/or previous use of the term "namu" in connection with Namu
> Portland's food carts located within the city of Portland, Oregon as described in
> Paragraph 10 of the Complaint, and within the reasonable zone of natural
> geographic expansion from the city of Portland, Oregon, including use of the term
> "namu" through the domain name www.namufoodcart.com and related website,
> regardless of whether those services are or were offered for sale, advertised, sold,
> or otherwise used in commerce before or after the Effective Date of this
> Covenant.

Plaintiff responds that Defendants' Covenant Not To Sue is not as geographically

expansive as the covenant not to sue at issue in *Already*, and that this action is therefore not

mooted by the Covenant. But the shoes at issue in *Already* were sold nationwide, so to be

effective the covenant needed to apply nationally. Here, Plaintiff has used the Namu mark only

in Portland for three food carts.

Plaintiff also contends that if it decided to expand its operations beyond the Portland

metropolitan area, the Covenant would not protect Plaintiff from possible legal action against it

by Defendants. Plaintiff does not, however, claim that it plans to expand beyond the Portland

area.  The mere possibility of future expansion is too speculative to support jurisdiction.  In

*Already*, the alleged infringer, Already, argued that the covenant there was insufficient because

"so long as Nike remains free to assert its trademark, investors will be apprehensive about

investing in Already." 133 S. Ct. at 729.  Already argued that "given Nike's decision to sue in

the first place, Nike's trademarks will now hang over Already's operations like a Damoclean

sword." *Id.*  The Court rejected these arguments because "once it is 'absolutely clear' that

challenged conduct cannot 'reasonably be expected to recur,'" the alleged injuries asserted by

Already were too conjectural or hypothetical to support Article III standing.  *Id.* at 730 (quoting

*Friends of the Earth*, 528 U.S. at 190); *see also Too Marker Products, Inc. v. Shinhan Art*

*Materials, Inc.*, No. 09-cv-1039-PK, 2010 WL 786041, at *4 (D. Or. Mar. 2, 2010) ("a

covenant's failure to address potential future products does not suffice to create an actual

controversy if those products are not yet in existence and are not included in the charge of

infringement").   Similarly, here Defendants' Covenant Not To Sue moots this action.  I conclude

that this court lacks subject matter jurisdiction.

## II.  Plaintiff Has Failed to Show Personal Jurisdiction Over Defendant

I also conclude that Plaintiff has failed to show personal jurisdiction over Defendants.

Defendant David Lee is a resident of San Francisco, and defendant Namu Haight LLC is a

California limited liability company with its principal place of business in San Francisco.

Plaintiff does not assert that there is general jurisdiction over Defendants, so only specific

personal jurisdiction is at issue.  This court uses a three-part test to determine whether the

exercise of specific personal jurisdiction over a nonresident defendant is proper:

(1) The non-resident defendant must purposefully direct his activities or

> consummate some transaction with the forum or resident thereof; or perform some
> act by which he purposefully avails himself of the privilege of conducting
> activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-
> related activities; and (3) the exercise of jurisdiction must comport with fair play
> and substantial justice, *i.e.* it must be reasonable. [*Schwarzenegger v. Fred
> Martin Motor Co.,* 374 F.3d 797, 802 (9th Cir. 2004)], *quoting Lake v. Lake,* 817
> F.2d 1416, 1421 (9th Cir.1987). The plaintiff bears the burden of satisfying the
> first two prongs of the test, whereupon the burden shifts to the defendant to
> "'present a compelling case' that the exercise of jurisdiction would not be
> reasonable." *Id., quoting Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476–78 (1985).

*Adidas America, Inc. v. Bobosky*, No. 10-cv-603-PK, 2010 WL 4365795, at *3 (D. Or. Oct. 8,

2010), *adopted*, 2010 WL 4364609 (D. Or. Oct. 28, 2010).

Here, Plaintiff argues that Defendants' cease and desist letter shows that Defendants

purposefully directed actions towards this district, and that the cease and desist letter caused

"immediate harm" because if Plaintiff "had been forced to comply, it would have cost

considerable money due to rebranding, domain changes and resulting lost revenue." Pls.'

Corrected Reply 9, ECF No. 37.  Plaintiff also argues that it "has already been damaged in that

any sale of the business would require disclosure" of the parties' dispute.

In *adidas America*, I addressed whether this court had personal jurisdiction over two

defendants, an Illinois resident and an Illinois corporation.  The individual defendant owned a

copyright for a poem entitled, "We Not Me," and the corporate defendant owned two federal

trademarks for the mark, "We Not Me, Ltd."  Plaintiff adidas America manufactured t-shirts

bearing the phrase, "we not me" as part of a "Basketball is Brotherhood" campaign.  An attorney

for the individual defendant, Bobosky, sent a letter to the general counsel for adidas, contending

that adidas was infringing Bobosky's copyrighted poem, and proposing to "settle the matter

amicably" without resorting to litigation.  The letter requested a meeting between adidas and

Bobosky to "share some of his 'thoughts and ideas'" on the issue. *Adidas America,* at *1.

Between November 2007 and November 2008, counsel for Bobosky and Bobosky himself sent multiple letters and emails to adidas about Bobosky's claim that adidas was infringing his federal copyright and trademark rights. Although Bobosky offered several times to travel to Portland to discuss the issues, adidas did not accept his offers. In November 2008, counsel for adidas replied to Bobosky "at length, explaining perceived weaknesses in his legal claims and terminating communications on the matter." *Id.* at *1. In October 2009, Bobosky and the corporation holding the trademarks brought an action against adidas and other parties in a federal district court in Texas, and the Texas court transferred the action to this court.

When Bobosky and the corporation moved to dismiss for lack of specific personal jurisdiction, I determined that in trademark infringement actions, "Ninth Circuit courts have used both purposeful direction and purposeful availment frameworks simultaneously, requiring the plaintiff to establish either that the defendant: (1) purposefully availed himself of the privilege of conducting activities in the forum state, or (2) that the defendant purposefully directed its activities toward the forum." *Id.* at *4.

I then concluded that under either the purposeful availment test or the purposeful direction test, adidas had not shown specific personal jurisdiction. As to purposeful availment, "even lengthy exchanges of business documents and communications with an entity within the forum state [do] not constitute purposeful availment." *Id.* at *5.

As to purposeful direction, I applied the "effects" test from *Calder v. Jones*, 465 U.S. 783 (1984): "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum

Page -10-  FINDINGS AND RECOMMENDATION

state." *Adidas America*, at *6 (citing *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme,* 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc) (internal quotation marks omitted)).

Adidas argued that the all three elements of the *Calder* effects test were met because "(1) defendants intentionally sent extensive correspondence over thirteen months to adidas to negotiate a sale of intellectual property rights; (2) defendants expressly aimed their correspondence at adidas in Oregon intending to negotiate that sale; and (3) defendants caused adidas harm by threatening legal action if the negotiations failed." *Adidas America*, at *6. I rejected adidas's argument, concluding that cease and desist letters generally "do not constitute purposeful direction." *Id.* I noted the policy reasons for encouraging cease and desist letters, which may aid in resolving a dispute over alleged infringement without resorting to litigation. Although there are exceptions, such as a cease and desist letter intended to wrongfully interfere with an entity's use of its intellectual property, none of the exceptions apply here.

In *adidas America*, the correspondence between the parties lasted for a year, and included multiple letters and emails. Here, there was one cease and desist letter, relatively brief negotiations, and then Plaintiff filed this action. I agree with Defendants that Plaintiff has not shown that this court has personal jurisdiction over Defendants because the cease and desist letters, without more, is not sufficient to create specific personal jurisdiction. Nor has Plaintiff shown that it suffered immediate harm from the cease and desist letter.

## CONCLUSION

For the reasons provided above, Defendants' Motion to Dismiss for Lack of Jurisdiction, ECF No. 18, should be GRANTED. Plaintiff's Request to Take Judicial Notice, ECF No. 32, is

GRANTED.  Judgment dismissing this action without prejudice should be entered.

<strong>SCHEDULING ORDER</strong>

The Findings and Recommendation will be referred to a district judge.  Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation.  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this ___ day of December, 2016.

Honorable Paul Papak
United for States Magistrate Judge